Clarence Edward KARSTENS,
Plaintiff-Appellant,

v.

WHEELER MILLWORK, CABINET &
SUPPLY CO., INC.; Glenn Wheeler;
Bernard Wheeler and American Insur-
ance Company, Defendants-Appellees.

Supreme Court of Tennessee.

Feb. 9, 1981.

Rehearing Denied April 6, 1981.

Jeffrey D. Boehm, Gentry & Boehm, Chattanooga, for plaintiff-appellant.

John L. Wheeler, Blake Moore, Spears, Moore, Rebman & Williams, Chattanooga, for defendants-appellees.

## OPINION

FONES, Justice.

This is a workers' compensation case in which the primary issue raised on appeal is whether an employer's insurance carrier is liable under the workers' compensation act for on-the-job injuries sustained by an employee after an employer has told his insurance carrier to cancel its insurance but before the Division of Workers' Compensation has received notice of termination of coverage, and within the period of coverage shown on the last filing of proof of insurance with the division.

The chancellor held that plaintiff's employer was liable for the workers' compensation benefits, but exonerated the employer's insurance carrier.

## I.

Plaintiff's employer, Wheeler Millwork, was incorporated in Chattanooga, Tennessee, in September 1977 and began operating shortly thereafter. At that time Wheeler employed more than five persons and obtained a workers' compensation insurance policy issued by American Insurance Company through its agent Buckley and Associates, Insurance. The form prescribed by the Division of Workers' Compensation for compliance with the mandates of T.C.A. §§ 50–1205—1206, entitled "Employer's Proof of Insurance of Liability to Pay Compensation" was filed by American Insurance Company and received by the division on November 1, 1977. The period of coverage was from September 16, 1977 to September 16, 1978. Following its own regular business procedures with respect to renewals, American Insurance Company filed a second employer's proof of insurance for the period September 16, 1978, to September 16, 1979. The Division of Workers' Compensation received that filing on July 17, 1978.

On or about October 10, 1978, the officers of Wheeler Millwork realized that the business was failing. On or about November 21, 1978, Bernard Wheeler, president of the corporation, advised the Buckley Agency that he wanted Wheeler Millwork's insurance policy cancelled, retroactive to September 16, 1978. According to Bernard Wheeler, the reason for this decision was that Wheeler Millwork then employed less than five persons and was advised by its attorney that the corporation was not subject to the workers' compensation law. The Buckley Agency sent a request to American Insurance Company on November 21, 1978, requesting that the Wheeler Corporation workers' compensation policy be "cancelled flat as of September 16, 1978." On December 11, 1978, American Insurance Company sent to the Division of Workers' Compensation a notice of termination of insurance coverage that was received on December 13, 1978. That notice advised that the insurance coverage was terminated effective September 16, 1978.

Plaintiff became an employee for Wheeler Millwork on January 4, 1978 and worked as a cabinet maker. On December 4, 1978, nine days before the notice of insurance termination was received by the Division of Workers' Compensation, plaintiff was accidentally injured while acting within the scope and course of his employment with Wheeler Millwork.

## II.

The insurance company contends, in substance, that the status of the insurance

policy controls and that the policy was cancelled as of September 16, 1978, that to hold the insurance company liable for benefits for an accident that occurred after that date would be "creating" insurance which could only be done by applying the doctrine of estoppel; that estoppel could not be invoked because there was no evidence that the injured employee relied upon the certificate of compliance posted at the employer's place of business or the employer's proof of insurance filed with the Division of Workers' Compensation.

Wheeler, the employer, contends that it did not have five employees at the time of the accident and was not subject to the workers' compensation act; but if it be adjudged subject to the act, that the insurance company should also be held liable because it filed the employer's proof of insurance with the Division of Workers' Compensation without authorization from Wheeler and failed to notify the division promptly that the insurance had been terminated. Wheeler also tendered into court the full year's premium for the policy year beginning September 16, 1978.

Plaintiff relies upon the status of the proof of insurance as filed with the Division of Workers' Compensation reflecting insurance coverage of Wheeler by American Insurance Company that was not withdrawn until December 13, 1978, nine days after plaintiff's accidental work injury. Plaintiff insists that the statutory scheme requiring proof of insurance, treating the employer and insurance carrier as one, and the express insuring provisions and denial of certain defenses mandated in T.C.A. § 50–1209 require the result that the insurance company and the employer be held liable.

### III.

The first issue to be disposed of is whether Wheeler was subject to the Workers' Compensation Act on the date of the accident, December 4, 1978.

The facts relevant to that issue are that Wheeler had five or more employees in September, 1977, recognized that it was covered by the Act, and insured its liability; that on or about October 10, 1978, it had three employees and terminated two, leaving plaintiff as its only employee. There was no proof as to when the corporation first had less than five employees, but under our view of this issue, that fact is immaterial.

T.C.A. § 50–906(d) provides that an employer who employs less than five persons may accept the provisions of the Workers' Compensation Law by filing written notice of such election with the Division of Workers' Compensation; that such election will be effective thirty days after notice and that such employer may withdraw from the Act by giving like notice. The Workers' Compensation Act is silent with respect to an express procedure for withdrawal from workers' compensation coverage by an employer who, like Wheeler, was subject to the Act by virtue of having five or more employees but thereafter reduced the work force below five.

On this issue, plaintiff cites *Town of Shelbyville v. Hamilton*, 170 Tenn. 297, 95 S.W.2d 43 (1936), and *Sevier County Highway Department v. Wells*, 217 Tenn. 130, 395 S.W.2d 800 (1965). Both employers had accepted coverage under T.C.A. § 50–906(e) providing for acceptance and withdrawal of counties and municipal corporations by notice to the Division of Workers' Compensation in the same manner as T.C.A. § 50–906(d), discussed above. Neither employer had served notice of withdrawal on the Division of Workers' Compensation at the time of the respective injuries and the Court held both employers liable. In *Wells*, Sevier County sought to escape liability on a plea of governmental immunity, after showing that its insurance carrier had become insolvent, but the Court rejected that defense.

A case bearing more directly upon the issue before us is *Ganus v. Asher*, 561 S.W.2d 756 (Tenn.1978). In *Ganus* the trial judge had held that the employer was not subject to the workers' compensation law because he did not have five employees on the day that plaintiff-employee sustained a work injury. The record before this Court

revealed that the employer probably had five or more employees prior to the date of the accident, but apparently had not filed as a covered employer with the Division of Workers' Compensation. Although the case was remanded because it was improperly disposed of on summary judgment, we addressed the legal question erroneously held by the trial judge to be dispositive of the case to prevent a repetition of that error that no doubt would have resulted in a second appeal. We held that an employer who has become subject to the Act by employing five or more persons who may be classified as regular employees under the Act, cannot withdraw from its coverage solely by the device of reducing the work force to four or less regular employees. The facts before us in the instant case require that we extend the *Ganus* holding and determine the explicit withdrawal procedure for an employer in Wheeler's position.

Every employer subject to the Workers' Compensation Act, whether by virtue of employing five or more persons, or electing coverage under T.C.A. § 50–906(d), must file with the Division of Workers' Compensation proof of insurance (or qualify as self-insured—not applicable here). T.C.A. §§ 50–1205—1206. An employer who has filed proof of insurance with the Division of Workers' Compensation has acknowledged that he is subject to the Act. Upon such filing, T.C.A. § 50–1207 requires that the Commissioner of Labor issue to the employer a certificate of compliance to be posted conspicuously at the employer's place of business. These statutory requirements are, of course, for the benefit and protection of employees and there is no reason why an employer who has become subject to the Act by employing five or more persons should be allowed to withdraw from the coverage of the Act in a manner different from one who elects to be subject to it pursuant to T.C.A. § 50–906(d). We therefore hold that an employer employing five or more persons who has filed proof of insurance pursuant to T.C.A. §§ 50–1205—1206 who thereafter reduces his work force to less than five persons, shall be deemed to

have elected to remain subject to the Workers' Compensation Law until notice of withdrawal is filed with the Division of Workers' Compensation in accord with T.C.A. § 50–906(d). No such notice was filed by Wheeler and the corporation was subject to the workers' compensation law at the time of plaintiff's injury.

## IV.

We address the question of the insurance company's liability to plaintiff for workers' compensation benefits as a result of the December 4, 1978, accident and injury.

T.C.A. § 50–902(a) defines the term "employer" and states that, "[i]f the employer is insured it shall include his insurer, unless otherwise herein provided."

T.C.A. § 50–1205 requires that, "Every employer, *under and affected* by the Workers' Compensation Law (1) shall insure and keep insured his liability . . . ." with an insurance company authorized to write such insurance in this State. (Emphasis added.) That section further mandates that the employer or his insurance carrier file evidence of insurance with the Division of Workers' Compensation within thirty days after the initial procurement of insurance and the annual renewal thereof. T.C.A. § 50–1206 repeats those requirements and invokes penalties for refusal or wilful neglect to comply. Both sections expressly require that the filing be accomplished by the employer or the insurance carrier.

We reiterate that T.C.A. § 50–1207 provides that upon compliance with the insurance filing provisions of T.C.A. §§ 50–1205—1206, the Commissioner of Labor shall issue a certificate of compliance which shall be conspicuously posted at the employer's place of business and further provides for revocation of the certificate by the Commissioner of Labor upon satisfactory evidence, "after thirty days notice and a hearing."

In *House v. John Bouchard & Sons, Co., Inc.*, 495 S.W.2d 541 (Tenn.App.1972), the Court of Appeals made these relevant comments about the purpose of those filing requirements:

"By this initial filing, the employer registers his business and places it under the supervision and surveillance of the State officials charged with the duty to see that the employer continues to comply with the law.

. . . .

"Plaintiff insists, correctly, that an employee has a right to know at all times of employment the manner in which compensation for work connected injury or death may be satisfied by the employer." *Id.* at 545.

In *Wilson v. French*, 601 S.W.2d 919 (Tenn.1980), the Court referred to the annual renewal filing as follows:

"While the initial filing may well be the most important, the annual renewal filings are important as employees have the continuing right to know at all times that financial responsibility exists to compensate them for work injuries and the identity of the insurance carrier they must deal with if injured." *Id.* at 923.

In both *House* and *Wilson* the respective employers had actually renewed coverage with their insurance carriers but had failed to file proof of insurance with the Division of Workers' Compensation. In both cases the statutory penalties were invoked, thus giving precedence to the status of the filing with the Division of Workers' Compensation over the contractual status between the employer and the insurance carrier. *See also Dawson Bros. & Beaver, Inc. v. Peterson*, 11 Tenn.App. 167 (1929) where a similar result was reached. In *Dawson Brothers* the initial filing with the Division of Workers' Compensation had not been accomplished prior to a work injury, although an insurance policy was in force and effect.

T.C.A. § 50–1209 requires that (1) all workers' compensation policies must contain express agreements that the insurer will pay all benefits conferred by the Workers' Compensation Law; (2) that that obligation shall not be affected by any default of the insured for the injury or by any default in the giving of any notice required by such policy, or otherwise; (3) that such agreement shall be construed to be a direct promise by the insurer to the employee entitled to compensation and may be enforced directly by the employee; and (4) failure of employer to comply with provisions of the policy regarding notice of injury "and such matters" shall not be a defense in a suit by an insured employee.

We are of the opinion that the foregoing workers' compensation statutes and cases cited require that we give precedence to the status of the proof of insurance as filed with the Division of Workers' Compensation over the contractual status between the employer and the insurance carrier.

The facts of this case demonstrate the fallacy of allowing the contractual status between the employer and insurance carrier to determine the date insured's coverage may be terminated. Wheeler asserts that its lawyer advised on October 10, 1978, that it was not covered and did not require workers' compensation insurance. Its request to cancel the insurance was not communicated to the agent until on or about November 21, 1978. On that date the request to terminate was sent to American Insurance Company. The commercial line supervisor with American Insurance Company testified that a request for cancellation of insurance made more than thirty days after the policy had gone into effect (impliedly without payment of any premium) required his approval, which he gave in this case. This was obviously a discretionary decision and the record is silent as to the factors that influence the exercise of that discretion. We cannot sanction an interpretation of the workers' compensation statutes that would permit the rights of employees to enforce claims against insurance carriers to be retroactively terminated by an arbitrary act of a company supervisor allowing an employer to retroactively cancel without payment of any premium.

We hold that an insurance carrier remains liable for the policy period shown on any initial or renewal filing of an Employer's Proof Of Insurance Of Liability To Pay Compensation filed with the Division of Workers' Compensation unless terminated by notice thereof filed with the Division

and the effective date of termination cannot precede the date such notice is received by the Division.

## V.

The last issue we address is whether the chancellor erred in determining that plaintiff was only entitled to temporary, total benefits from the date of the injury, December 4, 1978, to January 20, 1979.

The record reveals that on December 4, 1978, plaintiff incurred a severe, traumatic injury to his left hand, which for all practical purposes resulted in severance of all of his fingers, including the end of the thumb. Plaintiff's physician, Dr. Hayes, was able to reattach two of these fingers. After his release from the hospital on December 8, 1978, plaintiff continued to see Dr. Hayes on a regular basis and was also seen by a physical therapist approximately three time a week up until October, 1979, at which time he began to see the therapist about once a month. A second operation was performed on April 24, 1979, to alleviate adhesions that had formed in the two reattached fingers. In his answers to interrogatories dated November 27, 1979, Dr. Hayes testified that additional surgery was indicated requiring further hospitalization and physical therapy. He also testified that plaintiff had not reached maximum recovery and could not return to work, but gave no date as to when maximum recovery would be obtained. He did state, however, that a decision as to further surgery would be made at the end of January, 1980, and such surgery "would require four months recovery post-surgery, prior to work attempt." He gave a ninety-five percent permanent disability rating to plaintiff's left hand.

The problem arises due to the fact that in the interim plaintiff applied for unemployment compensation benefits. In the findings of fact of the Appeals Tribunal, after a hearing on February 21, 1979, it was found that: "Claimant was released by his doctor to return to work with certain restrictions and he contacted the employer for work and learned they were out of business. Claimant declares himself, able, available, and willing to accept suitable work." The Appeals Tribunal reverted the claim to an "approved status effective calendar week ending January 20, 1979." Plaintiff testified at trial that "the doctor had written a letter to the Department of Unemployment Compensation stating that it was possible [for him] to work at a job with [his] right hand only." Plaintiff further testified that he received ninety-one dollars a week for twenty-six weeks for unemployment compensation.

From these facts we hold that the chancellor erred in ruling that plaintiff was only entitled to temporary total benefits through January 20, 1979. The findings of the Appeals Tribunal involving plaintiff's claim for unemployment benefits expressly excluded any determination as to his ability to return to work using his injured left hand. Plaintiff's application for unemployment benefits was obviously prompted by the fact that he was told by his employer that workers' compensation benefits were not available. Neither application for nor receipt of unemployment benefits, however, should foreclose the independent determination of the extent of temporary total benefits under the well-established principles of workers' compensation law. If overlapping of these benefits has resulted, restitution of the unemployment benefits may be appropriate, but that issue is not before the Court.

The evidence is insufficient for this Court to make a determination as to exactly when plaintiff has or will reach the maximum recovery for his injury or has become or will be able to return to work. *See Brown Shoe Co. v. Pipes*, 581 S.W.2d 140 (Tenn.1979); *Simpson v. Satterfield*, 564 S.W.2d 953 (Tenn.1978).

The judgment of the Chancery Court of Hamilton County dismissing plaintiff's action against The American Insurance Company is reversed and its award of permanent partial disability is affirmed. This case is remanded to the trial court for a redetermination of the period of temporary, total disability and the entry and enforce-

ment of a decree for all workers' compensation benefits awarded against Wheeler Millwork and American Insurance Company. Costs are adjudged against American Insurance Company.

BROCK, C. J., and COOPER, HARBISON and DROWOTA, JJ., concur.

OPINION ON PETITION TO REHEAR

FONES, Justice.

The American Insurance Company has filed an earnest, respectful petition to rehear. Although the advocacy is excellent, it covers points already considered and determined and no new or decisive authority has been cited which was overlooked by the Court. See T.R.A.P. 39(a) and *Railroad v. Fidelity & Guaranty Co.*, 125 Tenn. 658 at 691–692, 148 S.W. 671 at 679–680 (1911).

The petition is respectfully denied.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.