IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2005 Session

## TENNESSEE INSURANCE GUARANTY ASSOCIATION v. CENTRE INSURANCE COMPANY

**Appeal from the Chancery Court for Davidson County**
**No. 00-03667-II(IV)     Carol McCoy, Chancellor**

---

**No. M2003-02647-COA-R3-CV - Filed June 10, 2005**

---

Tennessee Insurance Guaranty Association, a statutory agency created to meet certain obligations of insolvent insurance companies relative to workers' compensation, sued Centre Insurance Company seeking exoneration of certain workers' compensation obligations assumed by the agency upon the insolvency of Commercial Compensation Insurance Company. The trial judge granted summary judgment to Centre, and we affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Julie Murphy Burnstein, William Daniel Leader, Jr., Nashville, Tennessee, for the appellant, Tennessee Insurance Guaranty Association.

Tyree Bryson Harris, IV, Alfred H. Knight, Nashville, Tennessee, for the appellee, Centre Insurance Company.

## OPINION

Prior to December 18, 1998, Superior National Insurance Group, Inc. was the parent corporation to several wholly-owned subsidiaries, including Commercial Compensation Insurance Company, Superior National Insurance Company and Business Insurance Company. Each of these subsidiary corporations was authorized to, and did, write workers' compensation insurance for employers in Tennessee and in other states during and prior to 1998. On December 18, 1998, Superior National Insurance Group, Inc. sold all of the stock in Business Insurance Company to Centre Solutions Holdings (Delaware), Ltd. The corporate name of Business Insurance Company was then changed to Centre Insurance Company.

Relevant to this case are four policies of workers' compensation insurance issued by Commercial Compensation Insurance Company to four separate employers. The history of each policy is essential to an understanding of this controversy.

## I. Lee Adcock Construction Company, Inc. – – Employer

For the period September 24, 1997, to September 24, 1998, Business Insurance Company ("BICO") issued its policy number W979164585 providing coverage to Lee Adcock Construction Co., Inc. ("Adcock") for workers' compensation. Simultaneously, BICO filed with the Tennessee Department of Labor a Form I-1 certifying this coverage with the certification providing that BICO "hereby certifies that it has insured the employer named above in compliance with T.C.A. Sections 50-6-408 and 50-6-409 (Tennessee Workers' Compensation Law)." This Form I-1 identified the policy as number W979164585.

When the time came to renew this policy for the period September 24, 1998, to September 24, 1999, the renewal policy was issued, not by BICO, but by Commercial Compensation Insurance Company. The information page of the policy disclosed that it was policy number W989164585 and further disclosed that it was a renewal of policy number W979164585. Simultaneously with this renewal, a Form I-1 was filed with the Tennessee Department of Labor reflecting the issuing of policy number W989164585 and showing that it was a renewal of policy number W979164585. While the actual renewal policy was issued by Commercial Compensation Insurance Company, the Form I-1, filed contemporaneously with the renewal, still stated the name of the insurance carrier as BICO.

While the renewal policy was in effect, Adcock employee Timothy Davis, on May 11, 1999, suffered a work-related injury.

## II. Architectural Surfaces, LLC – – Employer

On October 12, 1997, BICO issued its policy number W97A165932 insuring Architectural Surfaces, LLC for workers' compensation insurance, the policy period being from October 12, 1997, to October 12, 1998. This was a new policy. Contemporaneously with this policy, BICO filed Form I-1 with the Tennessee Department of Labor reflecting the issuing of its policy number W97A165932.

When the time came for renewal of this policy on October 12, 1998, the renewal policy was issued, not by BICO, but by Commercial Compensation Insurance Company. The policy reflected that it was policy number W98A165932 and that it was a renewal of policy number W97A165932. The policy period was October 12, 1998, to October 12, 1999. Contemporaneously, an I-1 form was filed with the Tennessee Department of Labor reflecting the issuing of policy number W98A165932 as a renewal of policy number W97A165932. The Form I-1 asserted, however, that the carrier was not Commercial Compensation Insurance Company, but BICO.

While this renewal policy was in effect, Architectural Surfaces, LLC employee Virgil W. Uren, on August 19, 1999, suffered a work-related injury.

### III. C.W. Nunley and Larry Nunley d/b/a Nunley Poultry – – Employer

On November 8, 1998, Commercial Compensation Insurance Company issued a new policy, number W98B185313, to Nunley Poultry providing workers' compensation insurance with the policy period being November 8, 1998, to November 8, 1999. Simultaneously, Form I-1 was filed with the Tennessee Department of Labor showing the issuing of new policy, number W98B185313, but listing the carrier, not as Commercial Compensation Insurance Company, but rather as BICO.

While the policy was in effect, Nunley Poultry employee John Wesley Wiggins, on May 20, 1999, suffered a work-related injury.

### IV. Dickson County Nursing Home – – Employer

On September 1, 1998, Commercial Compensation Insurance Company issued a new policy, number W987179170, to Dickson County Nursing Home providing workers' compensation insurance with the policy period being July 1, 1998 to July 1, 1999. Simultaneously, Form I-1 was filed with the Tennessee Department of Labor reflecting new policy number W987179170 but listing the carrier, not as Commercial Compensation Insurance Company, but instead as BICO.

While the policy was in effect, Dickson County Nursing Home employee Tammy Uptegraw, on May 21, 1999, suffered a work-related injury.

All four of the above workers' compensation claims were filed with Commercial Compensation Insurance Company and were thereafter administered, and compensation was paid to the respective employees, by Commercial Compensation Insurance Company.

On September 26, 2000, the Los Angeles County Superior Court of California ordered Commercial Compensation Insurance Company into liquidation.

Commercial Compensation Insurance Company was a member of the Tennessee Insurance Guaranty Association ("TIGA") at all times relevant to this case. TIGA was created by statute, with its purpose being "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, and to provide an association to assess the cost of such protection among insurers." Tenn. Code Ann. § 56-12-102 (2000).

Commercial Compensation Insurance Company is an "insolvent insurer" within the meaning of the act, which provides in pertinent part:

(8) "Insolvent Insurer" means an insurer authorized to transact insurance in this state, either when the policy was issued or when the insured event occurred, and against whom a final order of liquidation has been entered after March 31, 1999, with a finding of insolvency by a court of competent jurisdiction in the insurer's state of domicile; . . . .

Tenn. Code Ann. § 56-12-104(8) (2000).

The duties of TIGA include the duty to "pay the full amount of any covered claim arising out of a worker's compensation policy. In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises; . . . ." Tenn. Code Ann. § 56-12-107(a)(1)(A) (2000).

TIGA filed a Motion for Partial Summary Judgment seeking a declaration that TIGA had no obligation to provide workers' compensation benefits to the four injured workers. This Motion was based on the fact that all of the Form I-1 documents filed with the Department of Labor stated that BICO (now Centre Insurance Company) filed the Form I-1 in each case; therefore, BICO, now Centre, was liable for the worker's compensation coverage as to these four employees.

Centre Insurance Company filed a Motion for Summary Judgment on the basis that the record conclusively established that all four of the policies of insurance were issued by Commercial Compensation Insurance Company and that the record conclusively established that Centre Insurance Company was a corporation separate and apart from Commercial Compensation Insurance Company.

On June 27, 2003, these Motions for Summary Judgment were heard by the Chancellor, after which an Order was entered sustaining the Motion of Centre Insurance Company based on specific findings of fact:

1. that Centre Insurance Company acquired all outstanding shares of Business Insurance Company on or about 18 December 1998;[1]

2. that the name of Business Insurance Company appears on a Form I-1 Certificate of Insurance for the four companies named in the cause of action of the Plaintiff, Tennessee Insurance Guaranty Association;

3. that the name of Business Insurance Company appears in error on each of the four Form I-1 Certificates of Insurance in that policies of worker's compensation insurance had actually been issued by Commercial Compensation Insurance Company;

---

[1]This finding was later amended to provide "that on or about 18 December 1998, Centre Holdings (Delaware) Limited acquired all outstanding shares of Business Insurance Company and at some point thereafter, changed the name of Business Insurance Company to that of Centre Insurance Company,".

4.     that each of those policies issued by Commercial Compensation Insurance Company were in full force and effect at the time of the work-related injuries embodied within the cause of action of the Plaintiff, Tennessee Insurance Guaranty Association;

5.     that each such policy issued by Commercial Compensation Insurance Company was both valid and in place for each of the employers to cover the claims of the work-related injuries in question;

6.     that Tennessee Insurance Guaranty Association has admitted that all of the policies of workers' compensation insurance issued to the employers in question were not issued by Business Insurance Company but rather issued by Commercial Compensation Insurance Company;

7.     that Commercial Compensation Insurance Company had accepted and administered each of the workers' compensation claims embodied within the cause of action of Tennessee Insurance Guaranty Association until its involuntary insolvency whereupon Tennessee Insurance Guaranty Association stepped into the shoes of Commercial Compensation Insurance Company and continued in the administration of those claims;

These findings of fact are not disputed on appeal, and the only issue presented, as stated by TIGA, is:

WHETHER THE TRIAL COURT ERRED IN GRANTING CENTRE'S MOTION FOR SUMMARY JUDGMENT AND DENYING TIGA'S MOTION FOR PARTIAL SUMMARY JUDGMENT BY HOLDING THAT THE FORM I-1 CERTIFICATES OF INSURER FILED BY BUSINESS INSURANCE COMPANY DO NOT TAKE PRECEDENCE OVER THE CONTRACT BETWEEN THE INSURER AND THE EMPLOYER.

Standards governing appellate review on summary judgment are familiar and well-settled. Since only issues of law are presented and no disputed fact questions are involved, review on appeal is *de novo* with no presumption as to the correctness of any findings of the trial court. *Gonzales v. Alman Const. Co.*, 857 S.W.2d 42 (Tenn.Ct.App.1993). The moving party on summary judgment has the burden of showing to the court that there are no disputed material facts creating a genuine issue for trial and that he is entitled to judgment as a matter of law. The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1998); *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn.1975).

Appellant, TIGA, does not dispute any of the findings of fact of the trial court including the finding that Form I-1 documents identifying BICO as the insurer were filed by mistake. Resting its entire appeal on *Kartsens v. Wheeler Millwork, Cabinet and Supply Co., Inc.*, 614 S.W.2d 37 (Tenn.1981), Appellant states its case in its brief:

> The holding in Karstens, is dispositive of this case. BICO filed Form I-1s for the Insureds certifying that BICO provided workers' compensation insurance to the Insureds. (Motion Exhs. A, B, C, D, U pp. 6, 27, 32-34, 43). No notices of termination were ever filed. (Motion Exh. AA). The filings control BICO's (now Centre's) obligation to provide workers' compensation benefits to the Insureds irrespective of the status of the contract of insurance. Accordingly, under Karstens, Centre, as BICO's successor, is obligated to provide workers' compensation insurance to the Insureds for the time periods reflected on the Form I-1s. Because Mr. Davis, Mr. Uren, Mr. Wiggins and Ms. Uptegraw suffered work related injuries during these time periods, Centre, not TIGA, should be responsible for the claims.

> In granting Centre's Motion for Summary Judgment and dismissing TIGA's complaint, the Trial Court focused on the existence of the CCIC policy. (R. 136) (App. 6). The Trial Court erred, however, in holding that the "Form I-1 Certificate of Insurance did not create a binding policy of insurance enforceable against Business Insurance Company, now Centre Insurance Company, when there was valid workers' compensation insurance in place" for each of the Insureds and the injured employees. (R. 136). Nothing in Karstens, limits its holding in the manner contemplated by the Trial Court. In fact, the holding of Karstens demonstrates just the opposite: an insurer remains liable for the policy period reflected on the Form I-1 unless the I-1 is terminated by notice to the Workers' Compensation Division <u>irrespective</u> of the status of the contract of insurance.

> . . . .

> Examination of the Supreme Court's rationale in <u>Karstens</u> demonstrates that the Trial Court erred and ignored the public policy of this state. In holding that the filing with the Workers' Compensation Division takes precedence over the contract between the employer and the insurer, the Supreme Court, quoting an earlier decision by the Tennessee Court of Appeals, recognized that <u>an employee has the right to know the identity of the insurer with whom the employee must deal if injured</u>. Id. at 41. Accordingly, as the Supreme Court recognized, the status of the Form I-1 filing controls the insurer's obligations irrespective of the status of the contract. The trial Court's ruling ignores the important policy recognized by the Supreme Court in <u>Karstens</u>: employees have the right to know the identity of their employer's insurer. The Trial Court's holding that the Form I-1 does not obligate BICO, now Centre, to provide insurance coverage because another policy of insurance existed denies injured workers this right.

The public policy issues undergirding *Karsten* bear little resemblance to the issues before the Court in the case at bar. First of all, TIGA is not an employee seeking worker's compensation benefits. It is the statutory successor to an insolvent insurance carrier that it admits issued policies of insurance that were in effect at the time of each of the losses in issue and that this insurer, prior to its liquidation, administered these claims, collected the premiums on these policies and paid the claims. Each of the policies in issue showed on its opening Information Page that it was issued by Commercial Compensation Insurance Company and not by BICO.

*Karstens* was an action by Karstens against his employer and American Insurance Company seeking to recover workers' compensation benefits for an undisputed on-the-job injury. American Insurance Company filed its Form entitled Employers Proof of Insurance of Liability to Pay Compensation on November 1, 1977, reflecting worker's compensation coverage from September 16, 1977, through September 16, 1978. The policy was renewed by American Insurance Company, and a second such form was filed on July 17, 1978, covering the period September 16, 1978, to September 16, 1979. On October 10, 1978, realizing that the business was failing, the employer advised American to cancel the policy retroactive to September 16, 1978. On December 11, 1978, American sent the Division of Worker's Compensation a Notice of Termination of Insurance Coverage, which was received on December 13, 1978, and which advised that coverage was terminated effective September 6, 1978. Karstens was an employee of Wheeler, and on December 4, 1978, nine days before the Notice of Insurance Termination was received by the Division of Worker's Compensation, he had a work-related accident.

In that action between the employee, on the one hand, and the employer together with his insurance carrier on the other, American Insurance Company insisted that the policy controlled, and that, since it was cancelled as of September 16, 1978, the insurer could not be held liable. The employer insisted that, since he did not employ five employees at the time of the accident, he was not subject to the Workers' Compensation Act. Alternatively, he asserted that the insurance carrier should be liable in that it had failed to notify the Department of Labor that the insurance had been terminated prior to the accident.

In addressing the insurance company's liability to the injured worker because of the accident of December 4, 1978, the supreme court analyzed the same statutory scheme that is now in existence. The supreme court held:

> We are of the opinion that the foregoing workers' compensation statutes and cases cited require that we give precedence to the status of the proof of insurance as filed with the Division of Workers' Compensation over the contractual status between the employer and the insurance carrier.

> The facts of this case demonstrate the fallacy of allowing the contractual status between the employer and insurance carrier to determine the date insured's coverage may be terminated. Wheeler asserts that its lawyer advised on October 10, 1978, that it was not covered and did not require workers' compensation insurance.

Its request to cancel the insurance was not communicated to the agent until on or about November 21, 1978. On that date the request to terminate was sent to American Insurance Company. The commercial line supervisor with American Insurance Company testified that a request for cancellation of insurance made more than thirty days after the policy had gone into effect (impliedly without payment of any premium) required his approval, which he gave in this case. This was obviously a discretionary decision and the record is silent as to the factors that influence the exercise of that discretion. We cannot sanction an interpretation of the workers' compensation statutes that would permit the rights of employees to enforce claims against insurance carriers to be retroactively terminated by an arbitrary act of a company supervisor allowing an employer to retroactively cancel without payment of any premium.

We hold that an insurance carrier remains liable for the policy period shown on any initial or renewal filing of an Employer's Proof Of Insurance Of Liability To Pay Compensation filed with the Division of Workers' Compensation unless terminated by notice thereof filed with the Division and the effective date of termination cannot precede the date such notice is received by the Division.

*Karstens*, 614 S.W.2d at 41-42.

Far from being an employee seeking compensation benefits, TIGA is the statutory successor in interest to the insurance carrier of the employer. Commercial Compensation Insurance Company knew that it had issued the policies in this case and knew that it had collected from the employer the premiums therefor prior to going into liquidation. TIGA is a creature of statute established for the express purpose of avoiding "financial loss to claimants or policyholders because of the insolvency of an insurer." Tenn. Code Ann. § 56-12-102 (2000). It is supported in its mission by assessment against all insurers who are required to be members of TIGA in order to transact business in Tennessee. Tenn. Code Ann. § 56-12-105 (2000). Among its duties are to "pay the full amount of any covered claim arising out of a workers' compensation policy." Tenn. Code Ann. § 56-12-107(a)(1)(A) (2000). The statutes also provide that TIGA "[b]e deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Tenn. Code Ann. § 56-12-107(a)(2) (2000).

TIGA insists that it is entitled to the benefit of the policy underlying the filing of the Form I-1, that policy being that "employees have the continuing right to know at all times that financial responsibility exists to compensate them for work injuries and the identity of the insurance carrier they must deal with if injured." *Wilson v. French*, 601 S.W.2d 919, 923 (Tenn.1980). TIGA is not the employee, and the *Karstens* policies protecting the employee are obviously not available to one who is, in fact, the insurer of the employer by statutory succession.

It is a long settled principle of contract law that an assignor cannot transfer to his assignee any greater rights in the subject matter of the contract than the assignor possesses under the contract. *Kennedy v. Woolfolk*, 4 Tenn. (3 Hayw) 195 (1817). That the statutory scheme places TIGA in the position of an assignee, both as to obligation and as to rights, is clear. TIGA is deemed "the insurer to the extent of its obligation on the covered claims and to such extent shall have rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Tenn. Code Ann. § 56-12-107(a)(2) (2000).

As this Court has held:

> The trial court held, and we agree, that Southern's right to recover under the Sales Listing Agreement is entirely derivative from and dependent upon the rights of its assignor, the Binswanger Company. An assignee of a non-negotiable chose in action, such as a contract, steps into the shoes of his assignor and takes his assignor's rights subject to all defenses which may be asserted against the assignor in an action to enforce the right. *Third Nat'l Bank v. Capitol Records, Inc.*, 60 Tenn.App. 189, 445 S.W.2d 471 (1969). Southern's right to recover under the Agreement in this case is determined by the rights of the Binswanger Company. If the Binswanger Company is barred from recovery, so too is Southern. In other words, if the Binswanger Company does not have shoes, Southern has nothing to step into. We have, after our review of this record, determined that Binswanger was shoeless.

*Binswanger Southern v. Textron*, 860 S.W.2d 862, 865-66 (Tenn.Ct.App.1993).

The rights of the employee are not involved, as all four of these employees were admittedly suffering from work-related injuries; they properly filed their claims against the insurer, Commercial Compensation Insurance Company; and, up until liquidation, all of their claims were administered and paid by Commercial Compensation Insurance Company. As to the other parties in this controversy, all of the employers knew who their insurance carrier was, and, as between BICO and Commercial Compensation Insurance Company, both of these corporations knew who the insurer was. Under these circumstances, what possible right could Commercial Compensation Insurance Company have against BICO that it could, by assignment, transfer to TIGA? Commercial Compensation Insurance Company "has no shoes."

Whether the Form I-1 for these policies was filed by mistake, oversight or deliberation is of little materiality. *Karstens* provides no policy that is applicable to a case not involving the rights of the employee. Summary judgment was properly granted to Centre Insurance Company, and we affirm the action of the trial court.

Costs of appeal are assessed against Appellant, Tennessee Insurance Guaranty Association, for which execution may issue if necessary.

_____
WILLIAM B. CAIN, JUDGE