

FILED
Jul 12, 2023
04:03 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Francisco Martinez | ) | Docket No. 2021-08-0059 |
| | ) | |
| v. | ) | State File Nos. 47716-2020 |
| | ) | 800503-2021 |
| ACG Roofing, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard June 15, 2023 |
| Compensation Claims | ) | in Murfreesboro, Tennessee |
| Robert V. Durham, Judge | ) | |

---

### Affirmed and Remanded

---

This appeal arises from the trial court's denial of an insurer's motion for summary judgment. The case, which arose in a construction industry setting, involves multiple contractors and multiple insurers. The primary issues addressed during the summary judgment hearing were whether the immediate employer's workers' compensation insurance policy had lapsed for non-payment of premium the day before the work accident and, consequently, whether that insurer was entitled to dismissal from the case. Having determined there were disputed issues of material fact regarding whether the policy had lapsed, the trial court denied the insurer's motion, and the insurer appealed. Upon careful consideration of the record, arguments of counsel, and relevant precedent, we conclude the trial court cannot exercise subject matter jurisdiction over a coverage dispute between an employer and its insurer under the circumstances presented here, but we nevertheless affirm the trial court's order denying the motion for summary judgment and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Gregory H. Fuller and Ashley B. McGee, Knoxville, Tennessee, for the insurer-appellant, Technology Assigned Risk

Monica R. Rejaei, Memphis, Tennessee, for the employee-appellee, Francisco Martinez

Jeffrey G. Foster, Jackson, Tennessee, for the appellees, Brian Elder Roofing and Builders Mutual Ins. Co.

Wm. Ritchie Pigue, Nashville, Tennessee, for the appellees, Stephanie Nava d/b/a Nava Roofing and Travelers Ins. Co.

ACG Roofing, Inc., employer-appellee, not participating

**Factual and Procedural Background**

On January 17, 2020, Francisco Martinez ("Employee") was working for ACG Roofing, Inc. ("ACG Roofing"), when he fell from a ladder and injured his right leg. For purposes of the current appeal, the occurrence of that injury is not refuted. Prior to the accident, ACG Roofing, owned and operated by Moises Garcia, had contacted an insurance agency, Premier Seguranza, LLC ("Premier"), to purchase a policy of workers' compensation insurance. Premier completed an insurance application on behalf of ACG Roofing and forwarded it to Technology Assigned Risk ("Technology"). Technology then issued a policy to ACG Roofing with a stated policy period of October 18, 2019, through October 18, 2020. The payment schedule required ACG Roofing to make certain installment payments of the premium. Some evidence indicates that Mr. Garcia delivered cash to Premier for ACG Roofing's premium payments, which then issued checks to Technology. In December 2019, Technology did not receive a timely installment payment and, as a result, it issued a cancellation notice on or about December 19, 2019. However, Technology then received a premium payment from Premier prior to the date of its intended cancellation, so there was no cancellation or lapse in coverage at that time.

Unfortunately, the check for the premium payment received by Technology in late December was returned for insufficient funds. Thereafter, Technology issued a second cancellation notice on December 31, 2019, with an effective cancellation date of January 16, 2020, and informed ACG Roofing and Premier that it required "certified funds" for subsequent premium payments. Although Technology received *another* premium payment check by certified mail on or about January 22, 2020, which was dated January 15, Technology rejected and returned the check because it was not "certified funds." Consequently, Technology maintained that the policy lapsed as of January 16, 2020, the day before Employee's accident, and it therefore declined to cover the accident.

Thereafter, certified funds were received by Technology on or about February 19, 2020, with a postmark date of February 13, 2020. Consequently, Technology reinstated ACG Roofing's policy as of February 14, 2020. When the policy period expired later in 2020, a "final audit" was completed by Technology and, despite the purported lapse in coverage, the calculated premium remained the same as the estimated premium calculated at the beginning of the policy period. As such, even though ACG Roofing purportedly went without coverage for a period of time, it ultimately paid Technology the same amount as it would have had there not been a lapse. Both Employee and the co-defendants maintained that this fact supports a finding that Technology had accepted a premium for the period during which it claimed the policy had lapsed. Conversely,

2

Technology maintained that the premium calculated as a result of the final audit had increased from the original estimate but that it had credited ACG Roofing for the amount of premium representing the period of the lapse. Thus, according to Technology, the increase in premium resulting from the final audit was essentially balanced by the premium credit attributable to the lapsed period.

Moreover, the general contractor, Brian Elder Roofing, submitted evidence suggesting that another contractor, Stephanie Nava d/b/a Nava Roofing, had allowed Moises Garcia and ACG Roofing, Inc. to operate under her company name and under her policy of workers' compensation insurance for jobs Mr. Garcia completed for Brian Elder Roofing in 2019 and 2020. It further asserted that it issued checks to Nava Roofing for work completed by Mr. Garcia from October 2019 until May 2020. Thus, Brian Elder Roofing took the position that either ACG Roofing and its insurer or Nava Roofing and its insurer are responsible for the claim. For its part, Nava Roofing asserted that it only allowed ACG Roofing to operate under its policy of workers' compensation insurance for purposes of one job and that it was not liable for Employee's accident on January 17, 2020.

Technology, Brian Elder Roofing, and Nava Roofing all filed separate motions for summary judgment in mid-to-late 2022. On November 16, 2022, the trial court entered an order denying all dispositive motions, and that order was not appealed. Thereafter, Technology filed a second motion for summary judgment and submitted additional evidence for the court's consideration. Following a hearing, the court again denied Technology's motion. The trial court determined that, despite the additional evidence submitted by Technology, there remained disputed issues of material fact, including whether Technology's insistence on receiving "certified funds" justified its rejection of the premium check dated January 15, 2020 (the day before the accident) despite there being no such term in the insurance contract. The court also noted a dispute regarding whether Premier had acted as agents for both ACG Roofing *and* Technology with respect to the receipt and acceptance of premium payments. Finally, the court noted that Technology had failed to submit evidence documenting it had notified the Bureau of Workers' Compensation ("Bureau") of its cancellation of the policy. Citing the Tennessee Supreme Court's opinion in *Karstens v. Wheeler Millwork Cabinet & Supply Co.*, 614 S.W.2d 37, 41 (Tenn. 1981), the court determined that "a question of material fact remains as to whether Technology gave adequate notice to the Bureau, assuming a valid policy cancellation." Technology has appealed.[1]

---

[1] In its notice of appeal, Technology's counsel appeared to indicate that it also represents ACG Roofing in the appeal. Yet, its argument is that Technology did not cover ACG Roofing on the date of the accident. Thus, it would be a clear conflict of interest for Technology's counsel to represent both Technology and ACG Roofing for purposes of this appeal when their respective interests so clearly diverge. *See Nelson v. QVS, Inc.*, No. 2021-06-1121, 2023 TN Wrk. Comp. App. Bd. LEXIS 14, at *20-21 (Tenn. Workers' Comp. App. Bd. Mar. 22, 2023) (affirming trial court's finding that a concurrent actual conflict existed disqualifying counsel from representing both the employer and its insurer). During oral argument,

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

## Analysis

On appeal, Technology asserts the trial court erred in denying its second motion for summary judgment because it "incorrectly applied the law to the facts regarding a lapse in ACG Roofing's [w]orkers' [c]ompensation coverage." In its brief, Technology argues the trial court failed to apply binding precedent, erred in determining a genuine issue of material fact existed regarding its notice of policy cancellation, and erred in determining Premier's issuance of payments to Technology created one or more genuine issues of material fact.

### *Lapse in Insurance Coverage*

In its brief, Technology acknowledges that the determination of whether insurance coverage lapsed "is principally a question of contract." In *Robinson v. Tennessee Farmers Mut. Ins. Co.*, 857 S.W.2d 559 (Tenn. 1993), on which Technology relies heavily, the Tennessee Court of Appeals addressed a case wherein the purchasers of a policy of automobile insurance failed to timely pay the premium, but the insurer offered the insured an opportunity to "cure" the untimely payment and ensure "continuous coverage" if the overdue premium was received by a date certain. *Id.* at 561. Before the insured paid the overdue premium, which eventually occurred after the date offered by the insurer to ensure continuous coverage, an accident occurred. *Id.* When the insurer

---

however, counsel for Technology acknowledged the error in its notice of appeal and affirmed that she only represents Technology.

4

declined to defend its insured in a subsequent lawsuit, the insured sued its insurer alleging breach of contract and bad faith. *Id.* Both parties then filed motions for summary judgment. *Id.*

In concluding the trial court had erred in granting summary judgment to the insured parties and denying summary judgment to the insurer, the Court of Appeals analyzed the contract principles of "offer and acceptance" and noted that "the offeror has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters which it may please him to insert." *Id.* at 565 (quoting 17 C.J.S. Contracts § 42, pp. 674-68). The court then concluded that the premium payment made two days after the insurer's deadline "failed to meet and correspond in every aspect with the offer and did not create a contract." *Id.* at 566.

In the present case, there are disputes regarding the events surrounding the alleged lapse in coverage. Technology asserts it had a right to put whatever conditions it deemed appropriate in its offer to provide ACG Roofing continuous coverage despite the lack of a timely premium payment. Thus, when it informed its insured and Premier in writing that it required "certified funds" by a date certain to avoid a lapse, it had the right to insist on such a condition as a matter of contract law. For its part, ACG Roofing did not participate in the summary judgment hearing or this appeal, and Premier is not a party to this litigation. Nevertheless, the record reflects that Premier sent Technology a check by certified mail for the overdue premium, which was dated the day before Employee's accident, and Technology chose to reject that payment. The record also reflects that the requirement for "certified funds" was not a term of the original insurance contract. Finally, the record contains insufficient information to determine whether Premier acted as an agent of ACG Roofing, an agent of Technology, or both, with respect to the receipt and processing of premium payments. Thus, to resolve such disputes, principles of both contract law and agency law must be considered.

The difficulty in addressing such issues, however, lies not in the application of law to facts, but in consideration of the threshold issue of subject matter jurisdiction. The Tennessee Court of Workers' Compensation Claims is a court of statutorily defined, *limited* jurisdiction. The court was created as of July 1, 2014, to have "original and exclusive jurisdiction over all contested claims for workers' compensation benefits." Tenn. Code Ann. § 50-6-237. Judges on the Court of Workers' Compensation Claims are granted authority to "hear and determine claims for compensation, to approve settlements of claims for compensation, to conduct hearings, and to make orders, decisions, and determinations." Tenn. Code Ann. § 50-6-238(a)(3). The Workers' Compensation Law, itself, limits its scope to "[e]very employer and employee subject to this chapter," who are obligated to "pay and accept compensation for personal injury or death by accident arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-103.

Yet, Tennessee Code Annotated section 50-6-102(11), which defines the word "Employer" for purposes of Tennessee's Workers' Compensation Law, states that "[i]f the employer is insured, it shall include the employer's insurer, unless otherwise provided in this chapter." Technology argues that because an employer's insurer "stands in the shoes of" the employer under the Workers' Compensation Law, this confers subject matter jurisdiction on the Court of Workers' Compensation Claims to adjudicate its rights and liabilities. Although there is no question that the Court of Workers' Compensation Claims can adjudicate both an employer's and its insurer's rights and obligations with respect to a claim for workers' compensation benefits filed by an *injured worker* (or an authorized representative), the primary issue in this case is whether the Court of Workers' Compensation Claims can adjudicate the rights and obligations of an employer and its insurer in circumstances where a coverage dispute arises *between* those two parties.

In *Acevedo v. Crown Paving, LLC*, No. 2021-06-1453, 2023 TN Wrk. Comp. App. Bd. LEXIS 7 (Tenn. Workers' Comp. App. Bd. Jan. 27, 2023), we addressed whether a medical provider could intervene in an action pending in the Court of Workers' Compensation Claims to protect its asserted interest in the payment of medical bills arising from a work-related accident. In concluding the Court of Workers' Compensation Claims could not exercise jurisdiction over the claim of a medical provider, we explained:

> Prior to July 1, 2014, Tennessee's courts of general jurisdiction, including circuit and chancery courts, had concurrent jurisdiction over numerous types of cases, including workers' compensation cases. Thus, the same courts exercising jurisdiction over workers' compensation cases also heard cases involving other legal claims such as contract disputes, personal injury claims, product liability cases, etc.

> In the Reform Act, however, Tennessee's General Assembly vested jurisdiction over workers' compensation cases with dates of injury on or after July 1, 2014, exclusively in the newly-created Court of Workers' Compensation Claims, which operates under the auspices of the Tennessee Bureau of Workers' Compensation. The court's purpose is to perform "the adjudicative function within the bureau of workers' compensation." Moreover, as noted above, the scope of Tennessee's Workers' Compensation Law is legislatively limited to the rights and obligations of employees and employers.

> In short, we conclude that the Court of Workers' Compensation Claims, and by extension the Workers' Compensation Appeals Board, cannot exercise subject matter jurisdiction over a medical provider's claim for the payment of a medical bill. It is the employee, not the medical provider, who can maintain a cause of action in the Court of Workers'

Compensation Claims for the payment of medical bills arising from work-related injuries.

*Id.* at \*15-17 (internal citations omitted). The facts of the present case raise a similar issue: Can the Court of Workers' Compensation Claims hear and resolve what is, in essence, a contract dispute between an employer and its workers' compensation insurer? We conclude, with limited exceptions, it cannot.

We first note the critical distinction between cases where the Court of Workers' Compensation Claims is presented with a factual dispute that *impacts* coverage versus that same court being presented with a coverage dispute hinging on the language of the insurance contract. In the former instance, the court is not applying contact law, but is performing its adjudicative function by resolving factual disputes between the parties as authorized by the Tennessee Workers' Compensation Law. In the latter, however, the court would be reaching beyond the facts of the case and the provisions of Tennessee's Workers' Compensation Law to resolve a dispute under contract law. For example, if the employee and employer in a workers' compensation claim assert two different dates of accident, one of which falls within the period during which the employer is covered by a policy of workers' compensation insurance and the other of which does not, it is incumbent upon the court to consider the evidence and decide the date the accident occurred based on a preponderance of the evidence. That determination may impact the contractual obligation of the insurer to pay benefits under the terms of its insurance policy, but it does not require the court to examine or interpret the terms of that contract. In short, there is no question that the Court of Workers' Compensation Claims may at times be called upon to resolve factual disputes that impact the employer's insurance coverage, and such determinations fall squarely within the jurisdiction of the court. That is quite different, however, from cases in which an insurer denies it has an obligation to defend or cover a claim based on the terms of the insurance contract.

In addition, there are limited circumstances where the Court of Workers' Compensation Claims may be called upon to assess the terms of a workers' compensation insurance contract in the context of an insurer's compliance with certain provisions of the Workers' Compensation Law. Tennessee Code Annotated section 50-6-408 lists certain "mandatory policy provisions" that must be included in a workers' compensation contract. For example, an insurer could not defend a claim on the grounds that it never received notice of the alleged work-related accident in circumstances where its insured received such notice because section 50-6-408(1) specifies that notice or knowledge of the insured employer "shall be deemed notice or knowledge, as the case may be, on the part of the insurer." Likewise, an insurer could not assert a lack of personal jurisdiction over it in circumstances where the court has personal jurisdiction over the insured employer. *See* Tenn. Code Ann. § 50-6-408(2). Finally, a policy of workers' compensation insurance could not include arbitrary limits on liability contrary to Tennessee Code Annotated section 50-6-409(a). Thus, the Workers' Compensation Law

7

contains certain provisions governing insurance contracts that could properly be addressed by the Court of Workers' Compensation Claims. However, that authority does not extend beyond the limited circumstances described in specific statutory provisions of Tennessee's law. We have located no specific provision authorizing the Court of Workers' Compensation Claims to hear and resolve a coverage dispute between an employer and its insurer.[2]

Furthermore, a dispute between an insurance company and its insured over coverage under the terms of the insurance policy is typically resolved through a declaratory judgment action. Pursuant to Rule 57 of the Tennessee Rules of Civil Procedure, the parties to such an action have the right to demand a jury, a mechanism that is unavailable in the Court of Workers' Compensation Claims. Moreover, the appeal of an insurance coverage dispute lies with the Tennessee Court of Appeals, which does not have jurisdiction over appeals of workers' compensation cases. *See* Tenn. Code Ann. § 50-6-225.

In the present case, Technology claims it was within its rights to cancel the insurance policy it had issued to ACG Roofing based on the terms of the insurance contract. It further asserts it was within its rights to condition its continuation of such coverage on the timely receipt of "certified funds" even though the policy itself does not require premium payments through certified funds. Finally, Technology argues that Premier's receipt of cash payments from ACG Roofing did not bind Technology in any way despite the fact that it had previously accepted payments from Premier on behalf of ACG Roofing. Technology denied that Premier acted as its agent in accepting cash payments from ACG Roofing. Each of these arguments hinges on interpretation of the terms of the insurance contract and the application of contract law and/or agency law to the facts of the case. It is a dispute between the employer and its insurer and does not impact Employee's entitlement to benefits as provided by the Workers' Compensation Law. We conclude, therefore, that such issues are beyond the subject matter jurisdiction of the Court of Workers' Compensation Claims.

*Notice to Bureau of Policy Cancellation*

Technology next asserts the trial court erred in concluding it had failed to properly notify the Bureau of Workers' Compensation of its cancellation of ACG Roofing's

---

[2] Another exception arises in the context of Tennessee's Uninsured Employers Fund. Tenn. Comp. R. and Regs. 0800-02-30-.06 authorizes a Bureau compliance investigator to investigate the circumstances of an alleged work accident and determine whether the employer was in compliance with insurance requirements. Thereafter, Tenn. Comp. R. and Regs. 0800-02-30-.08(2) authorizes the Court of Workers' Compensation Claims to "consider the investigator's report . . . regarding whether the employer had coverage on the date of the employee's injury." The purpose of such a review, however, is not to resolve a dispute between an employer and its insurer but to determine an injured worker's potential eligibility for benefits from the Uninsured Employers Fund.

policy. With respect to this issue, all parties and the trial court relied on the Tennessee Supreme Court's opinion in *Karstens v. Wheeler Millwork Cabinet & Supply Co.*, 614 S.W.2d 37 (Tenn. 1981). We conclude that this reliance on *Karstens* was misplaced.

*Karstens* involved an employer that had purchased a policy of workers' compensation insurance but later concluded it was no longer required to maintain such insurance when the number of persons it employed was reduced to less than five. *Id.* at 38. In 1981, when *Karstens* was decided, Tennessee's Workers' Compensation Law stated as follows:

> The Workers' Compensation Law shall not apply . . . [i]n cases where less than five (5) persons are regularly employed; provided, however, that in such cases the employer may accept the provisions of this law *by filing notice thereof with the said Division of Workers' Compensation* at least thirty (30) days before the happening of any accident or death[] and *may at any time withdraw the acceptance by giving like notice of the withdrawal*.

Tenn. Code Ann. § 50-906(d) (1981) (emphasis added). Thus, the Supreme Court in *Karstens* explained that "[e]very employer subject to the Workers' Compensation Act . . . must file with the Division of Workers' Compensation proof of insurance . . . . We therefore hold that an employer . . . who thereafter reduces his work force to less than five persons, shall be deemed to have elected to remain subject to the Workers' Compensation Law *until notice of withdrawal is filed with the Division of Workers' Compensation in accordance with T[enn]. C[ode] A[nn]. § 50-609(d)*. *Karstens*, 614 S.W.2d at 40 (emphasis added). Although the insurer in *Karstens* sent the required notification to the Division of Workers' Compensation, the notice was not received until nine days after the employee's injury. *Id.* at 38. As such, the Supreme Court held the insurer was required to provide benefits to the injured worker. *Id.* at 40.

However, the statutory language on which the *Karstens* Court relied is no longer part of Tennessee's Workers' Compensation Law. The comparable section in current law is Tennessee Code Annotated section 50-6-106(5), which provides:

> This Chapter shall not apply to . . . [c]ases where fewer than five (5) persons are regularly employed, except as provided in [sec.] 50-6-902. In cases with fewer than five (5) regularly employed persons, the employer may accept this chapter by purchasing a workers' compensation insurance policy[] and may at any time withdraw that acceptance by canceling or not renewing the policy and providing notice to the employees.

Thus, if a fact scenario similar to *Karstens* occurred under current law, there would be no requirement for an employer with less than five employees who elected to withdraw its acceptance of the Workers' Compensation Law to provide written notice to the Bureau.

9

Instead, such an employer could simply cancel or fail to renew its insurance policy and provide notice of that action to its employees. *See* Tenn. Code Ann. § 50-6-106(5). Here, no party has cited, nor have we located, any provision of Tennessee's current Workers' Compensation Law that requires an insurer to send notice to the Bureau when it cancels a policy for nonpayment of premiums.[3] Therefore, we hold that the Supreme Court's statements in *Karstens* addressing an insurer's continued liability in circumstances where it failed to give the Bureau notice of a policy cancellation are no longer applicable under current law. We further conclude the parties and the trial court erred in relying on *Karstens* for such a proposition.

Although we have determined the trial court's reliance on *Karstens* to identify a disputed issue of material fact was misplaced, we nevertheless hold that Employer's motion for summary judgment was properly denied because the grounds on which Technology sought summary judgment were beyond the scope of the trial court's subject matter jurisdiction. We further conclude that any remedy Technology may have with respect to its assertion that its policy lapsed due to the insured's alleged failure to timely make a premium payment is not in the Court of Workers' Compensation Claims.

## Conclusion

For the foregoing reasons, we affirm the trial court's order denying Technology's motion for summary judgment and remand the case. Costs on appeal are taxed to the appellant, Technology Assigned Risk.

---

[3] Of note, Tennessee Code Annotated section 50-6-406(a) requires every employer or its insurer to "file evidence of its compliance with § 50-6-405 with the bureau of workers' compensation." Section 50-6-405 requires every employer conducting business in Tennessee to "[i]nsure and keep insured" its liability for the provision of workers' compensation benefits or otherwise qualify as a self-insured entity. However, nothing in sections 50-6-405 or -406 requires an insurer to file notice with the Bureau of its cancellation of an insurance policy for nonpayment of premiums. Although there is no statutory provision addressing policy cancellations, Tenn. Comp. R. and Regs. 0800-02-01-.03 requires the Bureau to post on its website the "Insurance Rate Service Organization designated for purposes that include the filing of insurance policy provisions and coverages." Thereafter, Rule 0800-02-01-.04(2) requires an "adjusting entity" to "file appropriate evidence, with the designated Rate Service Organization, of the cancellation of an employer's workers' compensation insurance within fifteen (15) calendar days." In the present case, Technology presented evidence suggesting it filed the appropriate notice with the National Council on Compensation Insurance ("NCCI"), the organization identified on the Bureau's website.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Francisco Martinez | ) | Docket No. 2021-08-0059 |
| | ) | |
| v. | ) | State File Nos. 47716-2020 |
| | ) | 800503-2021 |
| ACG Roofing, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Robert V. Durham, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's order in the referenced case was sent to the following recipients by the following methods of service on this the 12th day of July, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Gregory H. Fuller<br>Ashley B. McGee | | | | X | ghfuller@mijs.com<br>abmcgee@mijs.com |
| Monica R. Rejaei | | | | X | mrejaei@nstlaw.com<br>atarbania@nstlaw.com |
| Wm. Ritchie Pigue | | | | X | rpigue@tpmblaw.com |
| Jeffrey G. Foster | | | | X | jfoster@morganakins.com |
| ACG Roofing, Inc./Moises Garcia | X | | | | 4690 Grecco Drive, Memphis, TN 38128<br>4535 Violet Cove, Memphis, TN 38122 |
| Robert V. Durham, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Matthew Keene*

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov